## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

RICK A. LUNDAY,                          )
                                         )
      **Plaintiff,**                )
                                         )
v.                                       )   **Case No. CIV-20-1238-G**
                                         )
STATE FARM FIRE AND                      )
CASUALTY COMPANY, a foreign              )
for-profit insurance corporation,       )
                                         )
      **Defendant.**               )

## <u>ORDER</u>

Now before the Court is a Motion for Partial Summary Judgment filed by Defendant State Farm Fire and Casualty Company (Doc. No. 37). Plaintiff Rick A. Lunday has responded in opposition (Doc. No. 42), and Defendant has replied (Doc. No. 44). Having reviewed the parties' submissions, the Court makes its determination.

### I.  *Standard of Review*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show

that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

II.    *Undisputed Material Facts*[1]

Plaintiff was the holder of a homeowner's insurance policy issued by Defendant. Specifically, State Farm insurance policy number 36-C6-8709-8 (the "Policy") covered Plaintiff's property located at 101 Main Street in Drummond, Oklahoma (the "Property")

---

[1] Facts relied upon are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to Plaintiff as the nonmoving party.

and was effective from June 7, 2019 to June 7, 2020. *See* Def.'s Mot. Ex. 1 (Doc. No. 37-1).[2] The Policy provided that Defendant "will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount." Def.'s Mot. Ex. 2 (Doc. No. 37-2) at 8. "Deductibles will be applied per occurrence." *Id.*

On December 20, 2019, Plaintiff initiated a claim under the Policy, representing that roof shingles and fencing on the Property had been damaged by a windstorm on December 9, 2019. *See* Def.'s Mot. Ex. 4 (Doc. No. 37-5) at 1; Def.'s Mot. Ex. 5 (Doc. No. 37-6) at 1, 8-10. Plaintiff also reported a small water stain on the kitchen ceiling inside the residence on the Property. *See* Def.'s Mot. Ex. 4, at 1.

On that same day, an adjuster for Defendant, Lance Harris, contacted Plaintiff by phone to discuss the loss. *See* Def.'s Mot. Ex. 5, at 8-9. According to Mr. Harris' notes, Plaintiff reported that "[s]everal shingles [had] blown off the roof" and certain components of the fence were broken or had blown off, but there was "no other known damage outside." *Id.* at 9. Plaintiff told Mr. Harris that he had lived in the home since 2004 and the roof was at least fifteen years old. *See id.* at 10. During this conversation, Mr. Harris and Plaintiff also discussed the Policy's Actual Cash Value Endorsement for Roof Surface Losses, which would apply depreciation to all roof surface losses. *See id.* at 9; *see also* Def.'s Mot. Ex. 2, at 4 (defining "actual cash value" as "the value of the damaged part of the property

---

[2] On certain of the exhibits attached to Defendant's Motion, there is a discrepancy between Defendant's numbering and the ECF document numbering. The Court refers to the exhibits as identified by Defendant.

at the time of loss, calculated as the estimate cost to repair or replace such property, less a deduction to account for pre-loss depreciation"); Def.'s Mot. Ex. 3 (Doc. No. 37-4) at 1.

Plaintiff's claim was then assigned to another adjuster for Defendant, Kerry Clanton,[3] for inspection.  Def.'s Mot. Ex. 5, at 8.  Mr. Clanton inspected the Property on December 31, 2019, in the presence of Plaintiff and his roofing contractor, and photographed the roof, gutters, and other parts of the Property.  *See id.* at 7.[4]  Regarding the damage, Mr. Clanton's claim file states in relevant part:

> INSPECTION RESULTS:
> DWELLING ROOF:
> Wood shake shingles roof, Inspected roof, found scattered hail damage, damaged shingles as follow:  Front=4, Right=13, Rear=0 and Left slope=15, found shingles to be repairable. No ADPL to pipe jacks. . . . .
> DWELLING EXTERIOR: Front elev: wnd dmg to gutter.  Right elev: NO ADPL.  Rear elev:  NO ADPL.  Left elev: wnd dmg to gutter and screen.
> DWELLING INTERIOR: Water dmg to wall in kitchen.
> FENCE: Detach and reset gate[.]

*Id.* at 7.[5]  The note states that the "cause of loss/origin" was wind damage.  *See id.*  Mr.

---

[3] Plaintiff represents that Mr. Clanton cannot be located.  *See* Pl.'s Resp. at 21.

[4] Defendant did not have an engineer inspect the Plaintiff's property for damage.  Pl.'s Resp. Ex. 4 (Doc. No. 42-4) at 30:1-4.

[5] Defendant speculates that Mr. Clanton's reference to "scattered hail damage" as a scrivener's error, *see* Def.'s Mot. at 8 n.1, but Plaintiff disputes this characterization.  *See* Pl.'s Resp. at 6-8.  Mr. Clanton's reference to hail damage on the roof is arguably inconsistent with other portions of his notes, his estimate, and his scope sheet, which identify wind as the cause of the damage to the roof and shingles.  *Compare* Def.'s Mot. Ex. 5, at 7, *with* Def.'s Mot. Ex. 7 (Doc. No. 37-8), at 3; Def.'s Mot. Ex. 6 (Doc. No. 37-7).  Viewing the record in the light most favorable to Plaintiff as the nonmovant, the Court does not find that Mr. Clanton's express representation that he "found scattered hail damage" on the dwelling roof was unintentionally included.

Clanton's scope sheet[6] notes the number of damaged shingles on each slope under "wind damaged shingles" as 4, 13, 0, and 15, and notes no damaged shingles in the category for hail- damaged shingles.  Def.'s Mot. Ex. 6 (Doc. No. 37-7).[7]

Mr. Clanton prepared Defendant's estimate on January 1, 2020, which totaled $2148.55 for replacement wood shake shingles, ridge cap, gutters,[8] a window screen on the left elevation, and repairs to the kitchen ceiling and cabinet to address water damage.  *See* Def.'s Mot. Ex. 7.  The estimate also included amounts to repair the fence gate and remove debris.  *See id.* at 6-7.  On January 3, 2020, Defendant sent the estimate to Plaintiff, as well as a letter explaining that Plaintiff's loss did not exceed the $2356.00 deductible under the Policy.  Def.'s Mot. Ex. 8 (Doc. No. 37-9) at 1 ("[W]e are unable to ma[k]e a payment on this claim.").  Mr. Clanton called Plaintiff the same day and explained the estimate, denial

[6] The photograph of Mr. Clanton's scope sheet is of poor quality; however, the parties do not dispute that the scope sheet reflects that Mr. Clanton found no shingles damaged by hail.  *See* Def.'s Mot. at 8; Pl.'s Resp. at 12.

[7] Plaintiff states in his affidavit that his home sustained damages due to hail and high wind following the storm on December 9, 2019.  Pl.'s Resp. Ex. 3 (Doc. No. 42-3) ¶ 2.  Plaintiff further states that he never told Defendant the damage was caused solely by wind and that Defendant never asked him if hail caused the damage.  *Id.* ¶¶ 2, 4.  Plaintiff also represents that Defendant instructed Plaintiff that he needed to have a contractor look at the property when Plaintiff first reported the damage, and the contractor inspected the Property and informed Plaintiff that hail had caused damage.  *Id.* ¶ 3.  Defendant urges the Court to reject Plaintiff's affidavit, arguing that statements therein contradict Plaintiff's deposition testimony where Plaintiff stated that he did not recall any precipitation during the storm.  *See* Def.'s Reply at 3-4.  The Court finds that Plaintiff's affidavit does not directly contradict the deposition testimony to which Defendant refers.  Plaintiff only testified that he did not hear any precipitation during the storm because he was sleeping.  *See* Def.'s Reply Ex. 1 (Doc. No. 44-1) at 47:2-25, 49:8-50:6.

[8] Defendant asserts that the cause of damage to the gutters is immaterial because Defendant included gutter repairs in its estimate.  *See* Def.'s Reply at 5; Def.'s Mot. Ex. 7, at 4-5.

5

of payment, and the Actual Cash Value Endorsement for Roof Surface Losses.  Def.'s Mot. Ex. 5, at 6.

On January 30, 2020, Plaintiff retained Coppermark Public Adjusters ("Coppermark") to assist him in obtaining coverage.  Pl.'s Resp. Ex. 3, ¶ 5.  The next day, Coppermark employee Scott Beach inspected the property and took photographs purportedly evidencing hail damage to the roof, an outdoor structure, a window screen, and a window air-conditioning unit.  *See id.*; Pl.'s Resp. Ex. 9 (Doc. No. 42-9); Pl.'s Resp. Ex. 10 (Doc. No. 42-10).  On February 13, 2020, Defendant received a letter of representation from Coppermark Public Adjusters on behalf of Plaintiff, requesting a copy of Plaintiff's Policy and Defendant's estimate.  *See* Def.'s Mot. Ex. 5, at 4-6.  Defendant mailed a copy of the Policy to Coppermark on February 19, 2020, and shortly thereafter a copy of its estimate and the letter informing Plaintiff that his claim was denied.  *See id.*

On August 19, 2020, Defendant received from Coppermark various materials, including a request for a full roof replacement on the Property as a result of "storm damage" and Coppermark's estimate totaling $117,626.91.  Def.'s Mot. Ex. 9 (Doc. No. 37-10) at 1, 13-14.  Defendant's employee Laura Radike reviewed the claim file, Defendant's original estimate, prior documentation for the claim, and the materials submitted by Coppermark.  Def.'s Mot. Ex. 5, at 2-3.  Ms. Radike also reviewed weather reports for the location of the Property and determined there had been multiple windstorms and hailstorms in the months between Defendant's inspection on December 31, 2019, and Defendant's receipt of the Coppermark materials on August 19, 2020.  *See id.* at 3; Def.'s Mot. Ex. 10 (Doc. No. 37-11).

On August 26, 2020, Ms. Radike called Coppermark and stated that the additional information had not changed Defendant's position.  *See* Def.'s Mot. Ex. 5, at 3.  Noting that weather reports showed there was no hailstorm around the Property on or about the date of loss and that Plaintiff had reported only wind damage not hail damage, Ms. Radike stated that Defendant did not accept the hail damage reflected in Coppermark's materials as related to the December 9, 2019 date of loss and Plaintiff must file a new claim for any such damage.  *See id.*

On that same date, Rachel Nicholson, who is also an employee of Defendant and is Ms. Radike's supervisor, reviewed the claim and discussed it with Coppermark.  *See id.* at 2; Pl.'s Resp. Ex. 5 (Doc. No. 42-5) at 18:4-6.  Ms. Nicholson reiterated Defendant's position—that the hail damage reflected in Coppermark's materials did not relate to the December 9, 2019 date of loss, and Plaintiff must file a new claim for any such damage. *See* Def.'s Mot. Ex. 5, at 2.  Coppermark insisted the damage reflected in the packet was from the same date of loss.  *See id.*

On that same day, Defendant sent a letter to Coppermark and Plaintiff reiterating that Defendant had determined that the damages presented by Coppermark did not occur on the December 9, 2019 date of loss and that damages from any separate occurrence could be addressed under a new claim.  *See* Def.'s Mot. Ex. 12 (Doc. No. 37-13) at 1.

After further discussion between Defendant and Coppermark regarding weather reports, Defendant sent another letter to Coppermark and Plaintiff, restating that damages from a separate occurrence could be investigated under a new claim.  Def.'s Mot. Ex. 13

(Doc. No. 37-14).  The letter included contact information for Plaintiff to file a new claim.  *See id.*

On October 15, 2020, Defendant sent another letter to Coppermark and Plaintiff further detailing its position.  Def.'s Mot. Ex. 14 (Doc. No. 37-15).  Specifically, Defendant discussed photographs in the materials submitted by Coppermark that showed rotting and deterioration on soffits and the porch ceiling.  *See id*. at 1.  Defendant described this rotting and deterioration as long-term damage that is not covered under the Policy, which provided in relevant part:

> *We* will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> g.  wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;
>
> h.  corrosion, electrolysis, or rust;
>
> i. wet or dry rot.

*Id.* at 2; *see also* Def.'s Mot. Ex. 2, at 17-18.  In this letter, Defendant again stated that Plaintiff could file a new claim to address any damage from a separate occurrence and noted that he had not yet done so.  *See* Def.'s Mot. Ex. 14, at 1.

Defendant sent a final letter to Plaintiff and Coppermark on October 22, 2020, reminding them a new claim could be filed to address damage from hail that did not occur on the date of loss.  *See* Def.'s Mot. Ex. 15 (Doc. No. 37-16).  Plaintiff has not filed a separate claim.

On December 9, 2020, Plaintiff initiated the instant claims for breach of contract and bad faith against Defendant. Plaintiff alleges that Defendant acted in bad faith in failing to acknowledge the damages incurred at Plaintiff's property. *See* Compl. (Doc. No. 1) ¶¶ 41-43. Defendant now moves for summary judgment on Plaintiff's bad-faith claim and the issue of punitive damages.

### III. *Discussion*

Defendant asserts that Plaintiff's bad-faith claim fails as a matter of law because Defendant had a legitimate business reason for disputing coverage and Plaintiff has not shown additional evidence of bad faith. *See* Def.'s Mot. at 14-20. Defendant further argues that because Plaintiff's bad-faith claim fails, Plaintiff may not seek punitive damages. *See id.* at 21. Plaintiff responds that summary judgment in favor of Defendant on Plaintiff's bad-faith claim is not justified, specifically arguing that Defendant cannot establish a "legitimate dispute" defense to Plaintiff's bad-faith claim. *See* Pl.'s Resp. at 15, 23-26.

### A. Bad Faith

"Under Oklahoma law, '[e]very contract . . . contains an implied duty of good faith and fair dealing.'" *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 998-99 (10th Cir. 2008) (alteration and omission in original) (quoting *Wathor v. Mut. Assurance Adm'rs, Inc.*, 87 P.3d 559, 561 (Okla. 2004)).[9] "An insurer has an 'implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received.'" *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (quoting *Christian v. Am. Home*

---

[9] The parties agree Oklahoma law controls. *See* Def.'s Mot. (citing Oklahoma law throughout); Pl.'s Resp. (same).

*Assurance Co.*, 577 P.2d 899, 901 (Okla. 1977)).  "The essence of an action for breach of the duty of good faith and fair dealing is the insurer's unreasonable, bad-faith conduct[,] and if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case."  *Id.* (omission and internal quotation marks omitted).

The analysis of a bad-faith claim under Oklahoma law occurs in two parts.  *See Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1315 (10th Cir. 2019).  First, "the court considers whether there is a legitimate dispute between the insurer and the insured regarding coverage or the value of the claim."  *Id.*  Then, if there is a legitimate dispute, the court "considers whether the plaintiff offered specific additional evidence to demonstrate bad faith."  *Id.*  Absent production of such evidence, "judgment as a matter of law is to be granted to the insurer."  *Id.* (internal quotation marks omitted).

### 1. *Legitimate Dispute*

"In Oklahoma, 'a claim must be promptly paid unless the insurer has a reasonable belief the claim is either legally or factually insufficient.'"  *Id.* at 1316 (quoting *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 171 (Okla. 2000)).  "An insurer does not breach its implied duty to deal fairly and act in good faith with its insured merely by refusing to pay a claim or by litigating a dispute with its insured, so long as there is a legitimate dispute as to coverage or the amount of the claim, and the insurer's position is reasonable and legitimate."  *K2 Groceries, Inc. v. Emps. Mut. Cas. Co.*, No. CIV-14-1235-HE, 2015 WL 1015325, at *2 (W.D. Okla. Mar. 9, 2015).  The Oklahoma Supreme Court

has recognized that there may be legitimate disagreement between insurer and insured "on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions," and "[r]esort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit." *Christian*, 577 P.2d at 905.

Therefore, "[t]he decisive question is whether the insurer had a good faith belief, *at the time its performance was requested*, that it had justifiable reason for withholding payment under the policy." *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991) (internal quotation marks omitted). "The fact that a reasonable jury could find in favor of the insurer based on all facts known or that should have been known by the insurer when it denied a claim is strong evidence that a dispute is 'legitimate.'" *Shotts*, 943 F.3d at 1316 (alteration and internal quotation marks omitted).

Defendant's January 1, 2020 estimate valued the covered damage sustained on the December 9, 2019 date of loss at $2148.55. Def.'s Mot. Ex. 7, at 3, 4-12. Coppermark's June 27, 2020 estimate valued the damage at $117,626.91. *See* Def.'s Mot. Ex. 9, at 19. Coppermark's estimate does not indicate an inspection date or date of loss and lists the type of loss as "storm damage." *See id.* at 1, 19. Upon reviewing the materials submitted by Coppermark, and weather reports on Plaintiff's reported date of loss for the location of the Property and during the time prior to Coppermark's estimate, Defendant rejected Coppermark's estimate, finding that it was based on "damages present that would not have occurred on the 12/9/2019 date of loss," specifically hail damage. *See* Def.'s Mot. Ex. 12; *see also* Def.'s Mot. Ex. 5, at 2-3; Def.'s Mot. Ex. 14, at 1.

Defendant contends that the undisputed material facts "establish nothing more than a difference of opinion between State Farm and Plaintiff as to the cause of loss and application of the per occurrence language in the Policy."  Def.'s Mot. at 16.  Plaintiff responds that there was no legitimate dispute regarding application of the Policy because it was unreasonable for Defendant to reject hail damage in its assessment of the loss to the Property caused by the December 9, 2019 storm.  *See* Pl.'s Resp. at 25; *see also* Def.'s Mot. Ex. 5, at 7.  Plaintiff presents several reasons for why this rejection was unreasonable.

First, Plaintiff points to the undisputed fact that in his December 31, 2019 inspection, Defendant's adjuster, Mr. Clanton, noted "scattered hail damage" on the dwelling roof.  Def.'s Mot. Ex. 5, at 7.  But Plaintiff makes more of this statement than is allowed by a full reading of what Mr. Clanton reported.  Mr. Clanton's note and estimate list the cause of loss as wind damage, rather than hail damage, and his scope sheet reflects no shingles damaged by hail and several damaged by wind.  *See id.*; Def.'s Mot. Ex. 6. Thus, even if Mr. Clanton concluded there was "scattered hail damage" to Plaintiff's roof, he apparently did not assess that damage as sufficiently severe to have caused a loss of any shingles on the roof.

The view that the cause of damage to Plaintiff's roof was wind is consistent with the fact that Plaintiff initially reported that his Property was damaged by a windstorm. Def.'s Mot. Ex. 4, at 1.  It is also consistent with weather reports collected by Defendant reflecting that no hailstorm occurred at the location of Plaintiff's Property on the date of loss, December 9, 2019.  *See* Def.'s Mot. Ex. 10; *see also* Def.'s Mot. Ex. 11 (Doc. No. 37-12).

Second, Plaintiff argues that photographs taken near the date of loss show significant hail damage to the Property that is attributable to the storm on the date of loss. *See* Pl.'s Resp. at 22, 25.  Plaintiff provides a photograph of the gutters on the house that was taken by Mr. Clanton at the December 31, 2019 inspection, showing dents that Plaintiff contends were caused by hail strike.  *See* Pl.'s Resp. Ex. 7 (Doc. No. 42-7); Pl.'s Resp. at 22.  Plaintiff also provides photographs of the Property taken by Coppermark on January 31, 2020, showing some denting to a window unit and another outdoor structure and a tear in a window screen.  *See* Pl.'s Resp. Ex. 9, at 7; Pl.'s Resp. Ex. 10.

The photographs do not, by themselves, show that Mr. Clanton's investigation was clearly inadequate or that his estimate was clearly incorrect.  Mr. Clanton's notes describe damage to gutters, a "screen," and roof shingles, which is consistent with the damage depicted in the January 31, 2020 photos.  Def.'s Mot. Ex. 5, at 7; Def.'s Mot. Ex. 6.  Mr. Clanton's notes did not record the denting to the window unit and outdoor structure, but it is unclear whether the window unit and outdoor structure were included in Plaintiff's claim, which reported "[s]everal shingles blown off the roof-some ridge blown off" and damage to the wood fence.  Def.'s Mot. Ex. 5, at 9.[10]  As a result, Defendant's initial estimate— that is, the estimate given prior to receipt of the Coppermark materials—has not been shown to be unreasonable in such a way as would evidence something other than a legitimate dispute, even with inferences therefrom drawn in Plaintiff's favor.

_____

[10] Per Defendant's notes, Plaintiff initially reported damage to his roof, kitchen ceiling, fence, and gate.  *See* Def.'s Mot. Ex. 5, at 9.

Further, the Court determines that Defendant's subsequent decision—that is, the decision made after receipt of the Coppermark materials—to reject hail damage in its assessment of the loss to the Property caused by the December 9, 2019 storm was not unreasonable. It is not clear whether the photographs cited by Plaintiff show hail damage or damage from some other debris. And, determinatively, the weather reports collected by Defendant reflect that there was no hailstorm at the Property on the date of loss. Plaintiff asserts that Defendant has no evidence of any hailstorm or other weather event taking place between the December 9, 2019 date of loss and the taking of Coppermark's photographs on January 31, 2020. *See* Pl.'s Resp. at 8. Therefore, says Plaintiff, any hail damage shown in either the Clanton photograph or the Coppermark photographs cited by Plaintiff would have been present on that date of loss. *See id.* Even accepting that there was no hail storm or other significant weather event between December 31, 2019 and January 31 2020 and that the photographs cited by Defendant reflect that hail damage to the Property was present on December 9, 2019, that does not mean that the damages presented in Coppermark's estimate occurred on that date. It was not unreasonable for Defendant to rely on the data reflected in the weather reports to determine that any hail damage to Plaintiff's Property could not be attributed to the storm on December 9, 2019, and therefore was not compensable in a claim based on that storm.

Even if Defendant's conclusion about the cause or extent of the damage sustained on December 9, 2019, was ultimately incorrect, "Oklahoma law does not require the insurer's position in a dispute to be correct to avoid liability" for bad faith. *Roesler v. TIG Ins. Co.*, 251 F. App'x 489, 506 (10th Cir. 2007). The fact that a reasonable jury could

14

find in favor of Defendant based on the information available to Defendant when it denied Plaintiff's claim "is strong evidence that [the] dispute is 'legitimate.'" *Shotts*, 943 F.3d at 1316 (internal quotation marks omitted). Accordingly, viewing the facts in the light most favorable to Plaintiff as the nonmovant, there exists legitimate disputes between the parties as to the amount of loss sustained on December 9, 2019, the cause of the damages included in Coppermark's estimate, and the application of the Policy's per occurrence language in this case.

### 2. *Additional Evidence of Bad Faith*

Having concluded there was "a legitimate dispute between the parties," the Court "proceeds to the second step of its analysis and considers whether the plaintiff [has] offered specific additional evidence to demonstrate bad faith." *Shotts*, 943 F.3d at 1315 (emphasis omitted).

> The additional evidence required for this showing may take several forms. For example, a plaintiff may demonstrate bad faith by providing evidence that the insurer did not *actually* rely on the legitimate dispute to deny coverage, denied the claim for an illegitimate reason, or otherwise failed to treat the insured fairly. A plaintiff may also show bad faith by providing evidence that the insurer performed an inadequate investigation of the claim.

*Id.* (alterations, citations, and internal quotation marks omitted). "To successfully rebut an insurer's defense of having a legitimate dispute as to coverage, 'the insured must present evidence from which a reasonable jury could conclude that the insurer did *not* have a reasonable good faith belief for withholding payment of the insured's claim.'" *Sellman v. AMEX Assur. Co.*, 274 F. App'x 655, 658 (10th Cir. 2008) (quoting *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993)). "In other words, 'judgment as a

matter of law is to be granted to the insurer when the plaintiff *fails* to produce specific evidence of bad faith.'" *Id.* (quoting *Oulds*, 6 F.3d at 1442).

Defendant argues that Plaintiff cannot meet his burden of establishing specific additional evidence of bad faith on Defendant's part. *See* Def.'s Mot. at 18. Viewing the evidence in the light most favorable to Plaintiff, the Court agrees. The summary-judgment record does not support a finding that Defendant did not actually rely on the legitimate dispute to deny coverage, denied the claim for an illegitimate reason, conducted an inadequate investigation, or otherwise failed to treat Plaintiff fairly.

Plaintiff's suggestion that Defendant has adopted policies or practices that it uses to avoid its contractual obligations to insureds are supported not by evidence of actual, widely-applicable policies but by a repetition of the complaints Plaintiff makes about the handling of his specific claim. The fact that Defendant did not have an engineer inspect Plaintiff's property for damage does not, by itself, reflect that Defendant inadequately investigated Plaintiff's claim. *See Roberts v. State Farm Mut. Auto. Ins. Co.*, 61 F. App'x 587, 592 (10th Cir. 2003) ("Under Oklahoma law . . . an insurer's investigation need only be reasonable, not perfect."). Also, Plaintiff's criticism of Defendant's per-occurrence policy provision is grounded in how that provision was applied to Plaintiff's claim, not the policy itself. Defendant did not deny that the Property was damaged; rather, it communicated its position that Coppermark's estimate included hail damage that per weather reports "would not have occurred on the 12/9/2019 date of the loss," and advised Plaintiff he could file a separate claim to address damage that occurred as a result of an

event other than the December 9, 2019 storm.  *See* Def.'s Mot. Ex. 12; *see also* Def.'s Mot. Ex. 13; Def.'s Mot.  Ex. 14; Def.'s Mot. Ex. 15.

For these reasons, viewing the facts in the light most favorable to Plaintiff, Plaintiff has not "offered specific additional evidence to demonstrate bad faith."  *Shotts*, 943 F.3d at 1315.  Specifically, Plaintiff has not produced summary-judgment evidence supporting the existence of a genuine dispute of material fact as to whether Defendant acted unreasonably or in bad faith when rejecting his claim in early January 2020 or after receiving Coppermark's estimate.  Therefore, Defendant is entitled to judgment as a matter of law on Plaintiff's bad-faith claim.

B.   Punitive Damages

"[W]hen a breach of obligations arises from tortious conduct," such as breach of the duty of good faith and fair dealing, "punitive damages may be recoverable."  *Wilspec Techs., Inc. v. DunAn Holding Grp. Co.*, 204 P.3d 69, 75 (Okla. 2009).   "[P]unitive damages are not recoverable solely for breach of contract obligations."  *Id.* at 74.  Because the Court finds Defendant is entitled to summary judgment as to Plaintiff's bad-faith claim, Plaintiff's sole remaining claim is for breach of contract.  Therefore, Defendant, as a matter of law, is entitled to summary judgment on the issue of punitive damages as well.  *See id.*

CONCLUSION

For the forgoing reasons, Defendant's Motion for Partial Summary Judgment (Doc. No 37) is GRANTED.  Plaintiff's breach of contract claim remains pending.

17

IT IS SO ORDERED this 12th day of July, 2022.

CHARLES B. GOODWIN
United States District Judge